**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
SCRANTON DIVISION**

EUGENE KOPECKI                             :       No.
                                            :
              Plaintiff                :
                                            :
v.                                            :
                                            :
COUNTY OF LACKAWANNA, LACKAWANNA   :
COUNTY BOARD OF ELECTIONS,          :
LACKAWANNA COUNTY DEPARTMENT     :
OF ELECTIONS AND VOTER REGISTRATION, and  :
ELIZABETH HOPKINS, individually and in her   :
Official capacity as                       :
DIRECTOR, DEPARTMENT OF ELECTIONS AND  :
VOTER REGISTRATION               :

             Defendants

## **COMPLAINT**

## **INTRODUCTION**

1.       Plaintiff brings this action because Lackawanna County's gross maladministration of mail-in and absentee ballots[1] during the 2025 Republican Primary Election disenfranchised Plaintiff and numerous other Republican voters residing in the City of Scranton, violating their constitutional rights.

2.       The Constitutions of the United States and Pennsylvania guarantee citizens full, free, fair, and accurate elections.

---

[1] A qualified absentee elector requires an excuse while the mail-in elector does not.  Both electors use the same ballots, and the terms are interchangeable for the purposes of the within Complaint.

3.      "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17. (1964).

4.      Voting is a "fundamental right" under the Fourteenth Amendment, and it is a right protected by the First Amendment because it secures "opportunities of all voters to express their own political preferences." *Norman v. Reed*, 502 U.S. 279, 288 (1992).

5.      The First and Fourteenth Amendments provide basic constitutional protection to the freedom to associate with others to advance political beliefs, such as participating in political primaries of your chosen party. *Kusper v. Pontikes*, 414 US 51, 57 (1973). The Plaintiff herein attempted to participate in the choice of general election candidates for the Republican Party and was excluded from doing so through no fault of his own.

6.      In supervising elections, a state may not infringe upon basic Constitutional rights. *Kusper* at 57. The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights, such as the right to vote. *See Wesberry v. Sanders*, 376 U. S. 1, 376 U. S. 6-7 (1964).

7.      The Commonwealth of Pennsylvania's Election Code permits voters, in both primary and general elections, to vote in person on election

day or cast their ballots by mail, before Election Day, with or without an excuse as to why they cannot appear at their polling place. 25 P.S. §§3050, 3146.1, 3146.5, 3150.11.

8.     The Pennsylvania Election Code vests the Board of Elections in each county of the Commonwealth with jurisdiction to conduct primary and general elections in its respective county. 25 P.S. §2641.

9.     Pennsylvania's primary election for the 2025 Municipal Election was held on May 20, 2025.

10.     The last day to apply for an absentee or mail-in ballot for the 2025 primary election was May 13, 2025. Voters may choose to obtain the ballot directly from a County Election Office by appearing and applying in person or by applying to have the ballot mailed, via the United States Postal Service, to an address of their choosing.

11.     Under Pennsylvania law, absentee and mail-in ballots, excluding overseas/military ballots, must be received by the County Board of Elections by 8:00 pm on Election Day to be lawfully counted. 25 P.S. §3146.6.

12.     During 2025, Pennsylvania conducted a municipal election wherein voters chose candidates for local and statewide judgeships, candidates for municipal offices such as mayor, district attorney, and school board, and candidates to district election boards[2] that conduct primaries and

---

[2] A judge of elections and two inspectors of elections are the three elected positions in each election district, also known as a voting precinct.  As the candidates for these positions must reside in the election district, each primary ballot for each election district in Lackawanna County would be

general elections in each of the county's approximately 160 election districts. 25 P.S. §§2671, 2754.

13.    Lackawanna County is one of Pennsylvania's 67 counties. Lackawanna County comprises cities, boroughs, and townships.  Scranton is the largest city within Lackawanna County, as illustrated by the following map, labelled Figure 1:

**Municipalities**



*Figure 1: https://www.lackawannacounty.org/about/community/municipalities.php*

---

unique. While there are three positions, each party may only nominate two candidates in the primary, a scheme designed to promote parity in the election boards. 25 P.S. P.S. § 2671,

14.     In the 2025 primary election, because primary voters were choosing the candidates for district election official positions, each voting precinct needed a separate and distinct ballot style to accommodate the state-wide and local offices. 25 P.S. §2671. As there are more than 160 election districts in Lackawanna County, each requiring a separate Republican and Democrat primary ballot, the 2025 primary election in Lackawanna County required more than 320 different ballot styles.

15.     By way of illustration, in the City of Scranton, Ward 1, Precinct 1, there were no official candidates for Judge of Election or Inspector of Election on that precinct's ballot, so primary voters had the opportunity to write in candidates for their election district:



16.     By way of a second illustration of the uniqueness of the ballot style necessary for each political party in each election district, in the City of Scranton, Ward 12, Precinct 03, there was one official candidate each for the

positions of Judge of Election and of Inspector of Election, with additional opportunity for write-in candidates:



17.     District election board officials serve four-year terms, which include conducting two federal primary and general elections, as well as two municipal primary and general elections in their election districts during their term in office. 25 P.S. §2671.

18.     During the 2025 Pennsylvania Primary Election, Lackawanna County election administration officials admitted to mailing incorrect absentee and mail-in ballots to 545 Republican voters who resided in the City of Scranton.

19.     These incorrect ballots were apparently printed using information from the 2024 Republican Party primary.

20.    The incorrect ballots received by these 545 Republican voters did not list the offices available for candidate nomination nor the candidates seeking such nominations in the 2025 primary election.

21.    The incorrect ballots received by the 545 Republican voters were unusable for the purposes of selecting candidates for nomination in the 2025 primary election.

22.    Upon information and belief, registered Democrat Primary voters residing in Scranton received the correct mail-in ballots.

23.    According to published notices from the county, voters residing in other municipalities within Lackawanna County received the correct ballots. *Voters receive incorrect ballots due to printer's error.* Welcome to Lackawanna County, PA. (2025, April 27). https://www.lackawannacounty.org/news_detail_T8_R628.php

24.    Therefore, upon information and belief, only Republican primary voters residing in the City of Scranton received incorrect ballots from Lackawanna County.

25.    Elizabeth Hopkins, the Lackawanna County Director of Elections, revealed in media interviews that she learned incorrect ballots were sent to Republican voters on April 26, 2025, twenty-four (24) days before Election Day, from the voters themselves. Some prospective voters called her county office to report receiving incorrect ballots. Borys Krawczeniuk, B. (2025, April 28). *Lackawanna County sent wrong mail-in ballots to Scranton*

*Republican voters*, WVIA Public Media

([https://www.wvia.org/news/local/2025-04-26/lackawanna-county-sends-wrong-mail-in-ballots-to-scranton-republican-voters](https://www.wvia.org/news/local/2025-04-26/lackawanna-county-sends-wrong-mail-in-ballots-to-scranton-republican-voters)).

26.     In public statements, Hopkins blamed the printing company, Election Systems & Software, for the erroneous mail-in ballots, but, notably, she did not identify any policy, procedure, process, or control, or any other efforts by her office to proofread the ballots for accuracy or otherwise to review the work of her vendor prior to sending the ballots to voters. Borys Krawczeniuk, B. (April 28, 2025). *Lackawanna County sent wrong mail-in ballots to Scranton Republican voters*, WVIA Public Media

([https://www.wvia.org/news/local/2025-04-26/lackawanna-county-sends-wrong-mail-in-ballots-to-scranton-republican-voters](https://www.wvia.org/news/local/2025-04-26/lackawanna-county-sends-wrong-mail-in-ballots-to-scranton-republican-voters)).

27.     Hopkins stated publicly that, after learning about the erroneous mail-in ballots, the county planned to mail new—presumably corrected—mail-in ballots to voters by Wednesday, April 30, 2025, with a letter "explaining the error and what they needed to do."

28.     Other than the plan to mail new, presumably corrected mail-in ballots to affected voters, upon information and belief, Hopkins made public no other effort to remedy the erroneous ballots or to contact voters using means other than a mailed letter despite the maintenance by her office of records containing additional contact information for many affected voters.

29.     Unfortunately, some voters, like the Plaintiff herein, who relied upon Hopkins' public statements that replacement ballots would arrive by mail received no new ballots, leaving him unable to vote in the 2025 Primary Election.

30.     Plaintiff herein is one of the affected voters.

31.     Plaintiff Eugene Kopecki applied timely for mail-in ballots for the 2025 primary election but, along with 543 other Republican voters in the City of Scranton, received unusable mail-in ballots that listed 2024 candidates and races instead of the candidates and races for the 2025 primary election.

32.     Upon realizing his mail-in ballot was unusable, Mr. Kopecki telephoned the Lackawanna County Board of Elections and was advised that he would receive a new, corrected ballot.

33.     Mr. Kopecki never received the corrected ballot in the mail or by other means.

34.     While in years past, Mr. Kopecki voted in person on Election Day, he is now in his eighties and has chosen to vote by mail for the past few years due to difficulty in going to a polling place in person on Election Day.

35.     Plaintiff treasures his right to vote and attempted to exercise this fundamental right by casting his ballot by mail, as Pennsylvania law permits; yet, despite his timely request and, once having received an incorrect ballot, public and private assurances from Hopkins' office

concerning replacements, Mr. Kopecki never received a usable, corrected mail-in ballot for the May 20, 2025, primary election.

36.    Due to his age, and his responsibility to care for his ill wife, Plaintiff was unable to travel to his polling place on Primary Election Day, May 20, 2025.

37.    According to data published on the Lackawanna County Board of Elections website, although 545 Republican Primary voters residing in Scranton requested mail-in or absentee ballots, only 395 Scranton voters cast ballots by mail in the 2025 Republican Primary Election in the contested Republican Mayoral Primary. Had Plaintiff herein timely received a correct ballot, he intended to cast it. No publicly available data is available as to how many of the other Republican Primary voters residing in Scranton intended to cast ballots had they received the correct ballot. *See* Welcome to Lackawanna County, June 6, 2025. (https://www.lackawannacounty.org/government/departments/elections/certified_election_results.php#outer-5705).

38.    Plaintiff brings this action to vindicate the violation of his constitutional right to vote by Defendants in the 2025 Primary Election and to prevent future violations of their right to vote by Defendants.

39.    Plaintiff does not seek to overturn the results of the 2025 Primary Election and does not seek a recount of the votes in that election.

## PARTIES

40.    Plaintiff Eugene Kopecki is a qualified and registered voter in the Commonwealth of Pennsylvania who resides in Lackawanna County and is affiliated with the Republican Party. Kopecki was and remains a registered Republican voter in Lackawanna County in 2025 and was qualified to vote in Lackawanna County in the 2025 Republican Primary Election on May 20, 2025. Kopecki requested a mail-in ballot for the May 20, 2025, Primary Election and received the incorrect ballot.  He contacted the Board of Elections but did not receive a replacement ballot despite public and private assurances by the Lackawanna County Board of Elections that a replacement ballot would arrive by mail. Kopecki intends to vote in future elections in Lackawanna.

41.    Defendant Lackawanna County is a county of the third class organized and existing under the laws of the Commonwealth of Pennsylvania.

42.    Defendant Lackawanna County Board of Elections is a county board of elections organized under 25 P.S. § 2641 and the Lackawanna County Home Rule Charter. The Board of Elections is responsible for supervising the Department of Elections & Voter Registration (the "Department"). 25 P.S. §§2641, 2642.

43.    Defendant Department is an entity organized under the Board of Commissioners under 25 P.S. § 2641 and the Lackawanna County Home

Rule Charter. The Department is responsible for administering elections and adopting policies and procedures for the administration of elections in Lackawanna County pursuant to the Pennsylvania Election Code and all federal, state, and local laws and regulations. 25 P.S. §§2641, 2642.

44.    Defendant Elizabeth Hopkins is the current Director of Elections for Lackawanna County and had the same role during the 2025 Primary Election, tasked with overseeing the Department, implementing policies and procedures, and training other election staff. She has direct responsibility for implementing appropriate processes and controls to ensure that each ballot is proofread and subjected to appropriate testing.  She exhibited deliberate indifference and/or intent in failing to administer this election properly.

45.    All defendants are persons who acted under color of state law to deprive Plaintiffs of their constitutional rights. 42 U.S.C. § 1983; *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Ex parte Young*, 209 U.S. 123 (1908); *Smith v. Wade*, 461 U.S. 30 (1983).

## JURISDICTION & VENUE

46.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

47.    Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## BACKGROUND

**DEFENDANTS DENIED AND SEVERELY BURDENED PLAINTIFF'S RIGHT TO CAST HIS BALLOTS IN THE 2025 PRIMARY ELECTION.**

48.     Under the Pennsylvania Election Code, Defendants have an affirmative duty to administer elections properly. 25 P.S. § 2642.

49.     Defendants only became aware of the incorrect, unusable mail-in ballots sent to Republican primary voters residing in the City of Scranton when voters contacted their office, demonstrating that Defendants' failure to review the mail-in ballots prior to sending them to voters.

50.     Defendants claimed to have subsequently printed and sent corrected mail-in ballots to affected voters.  However, Plaintiff herein did not receive the correct ballot.

51.     Defendants immediately blamed the problem on an outside vendor contracted by Lackawanna County to print ballots for the 2025 primary election, but the responsibility for the proper administration of the Primary Election and ensuring the accuracy of ballots, falls as a matter of law on the Defendants and such responsibility cannot be delegated to an outside vendor.

52.     Notably, due to the hyper-local primary for district board election officials in each election district, this error did not simply involve one wrong ballot style, as each election district in Scranton required separate and distinct ballot styles.

53.     Despite the complexity of an election involving different ballot styles for each election district, Defendants failed to adopt a policy, procedure, process, or control, or any other efforts requiring election staff to review and proofread ballots for accuracy before mailing them to voters.

54.     Defendants failed to train election staff to review and proofread ballots for accuracy prior to mailing.

55.     Pursuant to the Pennsylvania Election Code, counties must provide notice and perform public pre-election logic and accuracy testing ("L and A Testing") of election processes, to ensure that ballots, scanners, and all components of election systems are in good working order. 25 §3031.10

56.     As a component of L and A Testing, the Department of State instructs counties to perform testing on all printed ballot styles to be issued to voters to confirm both accuracy and that the ballots can be read by tabulation equipment. See Pennsylvania Department of State  Directive on Logic & Accuracy Testing, Directive 1 of 2025, April 7, 2025, Version: 3.1, https://www.pa.gov/agencies/dos/resources/voting-and-elections-resources/directives-and-guidance#accordion-c281718b59-item-f8e45d2cc7.

57.     A specific step in L and A Testing is to "test the printed ballots that will be issued to voters to confirm that the ballots are accurate and can be read by the tabulating equipment once they are returned for counting." *Ibid.*

58.    Under the Pennsylvania Election Code, it is the duty of the Lackawanna County Board of Elections to "examine" the ballots to be used and to certify "[t]hat the offices and questions on the official ballot correspond in all respects with the ballot labels assigned to such particular election district". 25 P.S. § 3031.10 (e)(4).

59.    For counties using pre-printed ballots, such as Lackawanna County, the Department of State recommends that the county "gather from the print vendor test ballots for all ballot styles to be used in the election." *Ibid.*

60.    Because "all ballot styles" must be tested, upon information and belief, Defendants did not test ballots at issue here—or did not do so in a manner sufficient to comply with Pennsylvania law and Department of State directives. 25 P.S. § 3031.10; *Ibid.*.

61.    Moreover, Defendant Hopkins, fully aware of the complexity of these local elections, including the numerous different ballot styles required, and the voting rights at stake, intentionally and with deliberate indifference chose not to direct her staff to proofread the Republican primary ballots or to subject them to the appropriate testing.

62.    According to a news article, Defendants received ballots for the 2025 primary election pre-folded from their printer vendor. Other than checking that the election district at the top of the ballot was correct—hardly sufficient to meet the standard set by the Pennsylvania Election Code—the

Defendants performed no review, testing, proofreading, spot-checking, or quality control before placing the ballots in envelopes to mail to voters. Indeed, it appears the election workers did not even unfold the ballots fully to review them prior to placing them in the envelopes to send to voters. Borys Krawczeniuk, B. (2025, April 28). *Lackawanna County sent wrong mail-in ballots to Scranton Republican voters*, WVIA Public Media (https://www.wvia.org/news/local/2025-04-26/lackawanna-county-sends-wrong-mail-in-ballots-to-scranton-republican-voters).

63.     Such limited actions by Defendant are not sufficient to comply with the requirements of Pennsylvania law, including the requirement to "examine" and to certify "[t]hat the offices and questions on the official ballot correspond in all respects with the ballot labels assigned to such particular election district". 25 P.S. § 3031.10 (e)(4).

64.     Defendants' disenfranchisement of voters through the printing, provision, and use of incorrect ballots was entirely foreseeable and preventable with appropriate policies, procedures, and training.

65.     The review and proofreading of ballots are well-established election procedures implemented for over a hundred years in election offices across the country.

66.     If the Defendants had implemented proper protocols and procedures to review, proofread, and confirm the accuracy of the printed ballots and trained election staff in such protocols and procedures, Plaintiff

would not have been disenfranchised. Moreover, Defendant Hopkins apparently chose not to cause all ballots to be accurately printed and comprehensively tested as required under state law. 25 §§2969, 3031.10.

67.    Other than Hopkins directing new ballots to be sent via regular mail to voters whom she believed were affected, Defendants  apparently had no comprehensive plan or procedure in place to ensure that the affected voters received both notification and explanation of the error as well as the corrected ballots, relying solely on correspondence sent via the United States Mail and limited, non-substantive public comment.

68.    The Pennsylvania Election Code, 25 P.S. § 2500, et seq., governs all elections that occur in Pennsylvania.

69.    A fair and honest election is the primary purpose of the Pennsylvania Election Code. *Perles v. Hoffman*, 213 A.2d 781, 783–84 (Pa. 1965).

70.    The Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2901 et seq. (hereinafter "the Home Rule Law") authorizes counties to utilize home rule charters to establish a local government framework.

71.    Article 9, Section 2 of the Pennsylvania Constitution provides that municipalities shall have the right and power to frame and adopt home rule charters, and a municipality which has a home rule charter may exercise any power or perform any function not otherwise denied by the constitution,

by its home rule charter, or by the General Assembly. PA. CONST. art. 9, §
2.52.

72.    The Lackawanna County Board of Elections, the Department,
and the Director of Elections are responsible for creating, implementing, and
enforcing policies, practices, and procedures to ensure that elections in
Lackawanna County are conducted according to federal and state election
laws and to ensure that voters are not disenfranchised.

73.    Under the Pennsylvania Election Code, county boards of
elections shall perform certain duties to assure free and fair elections: (a)
purchase, preserve, store, and maintain primary and election equipment of
all kinds, prepare and print ballots, and procure all other supplies for
elections; (b) make and issue rules, regulations, and instructions for the
guidance of election officers and electors; and (c) instruct election officers so
that primaries and elections may be honestly, efficiently, and uniformly
conducted. 25 P.S. § 2642(c), (f) and (g).

74.    The Department's employees conduct primary and general
elections for federal, state, and local offices and questions, including all
required tasks, such as registering voters, maintaining voter rolls, publishing
notices and processing mail-in and absentee ballot applications and ballots.

75.    The Board of Elections and Director of the Department are
responsible for all personnel and employees of the Bureau, including training.
25 P.S. §§ 2641,2642.

76.    The Director of the Department during the 2025 Primary Election was Elizabeth Hopkins.  She still holds that role.

77.    The Director of the Department oversees and manages the Department.

78.    Under the Pennsylvania Election Code, Defendants had an affirmative duty to administer the election in accordance with law, properly train employees, and procure accurate ballots. 25 P.S. § 2942(a)(c)(g).

79.    The Pennsylvania Election Code mandates the appropriate form for official primary ballots. 25 P.S. §§ 2962, 3146.3, 3150.13.

80.    The Pennsylvania Election Code provides that only official ballots shall be cast or counted at any primary or general election. 25 P.S. § 2961.

81.    Under the Pennsylvania Election Code, Defendants are responsible for the proper and accurate printing of ballots. 25 P.S. §§ 2964, 2969.

82.    The Pennsylvania Election Code specifically addresses the printing of ballots: "It shall be the duty of the county board of elections of each county to cause all the ballots and ballot labels to be used therein to be accurately printed[.] 25 P.S. §§ 2969

83.    Under the Pennsylvania Election Code, Defendants must deliver accurate ballots to absentee and mail-in voters. 25 P.S. § 3146.5, 3150.15.

84.    Defendants made affirmative directives, decisions, or decrees, including the decision not to adopt policies, procedures, processes, controls, and training requiring review of ballots, that resulted in the delivery of improper and unusable ballots to 545 Republican Primary voters in 2025, directly causing the violation of Plaintiffs' constitutional rights.

85.    Defendants' affirmative directives, decisions, or decrees that neglected to provide for the appropriate processes to review and confirm the accuracy of ballots caused the violation of Plaintiff's constitutional right to vote.

86.    Defendants' policies and practices failed to provide for adequate remedial measures such that upon discovery of the improper and unusable ballots that were sent to 545 Republican Primary voters, Defendants failed to make appropriate decisions and take necessary actions to assure that all voters affected received the correct ballot in a timely fashion so that the voters could exercise their constitutional right to vote.

87.    Defendants had actual or constructive notice that the lack of appropriate planning and training for quality control procedures to ensure that the ballots were correct had or would violate citizens' constitutional right to vote.

88.    Defendants' lack of appropriate planning and training, considering the actual or constructive notice that it would cause

constitutional violations, is the functional equivalent of an affirmative decision by the defendants themselves.

89.     Defendants acted with deliberate indifference to the rights of Plaintiffs and the protection of the voting franchise.

90.     Considering the weight of the statutory duties and responsibilities of the Defendants regarding citizens' fundamental right to vote, the need for adequate procedures, processes, controls, and training is so obvious that inadequate procedures, processes, controls, and training are likely to result in a violation of the constitutional right to vote.

91.     Defendants maintain inadequate training programs for employees on the proper and accurate administration of elections or their duties and obligations under federal, state, or local law.

92.     Upon information and belief, Defendants also do not maintain a training manual or written guidance setting forth quality control procedures for ballots and the administration of elections by employees or their duties and obligations under federal, state, or local law.

93.     Although, the Department of State provides suggested guidance to county boards of elections; it is not meant to substitute for the policies and procedures necessary to accurately administer an election. Even counties that purportedly follow the guidance have experienced failures of shocking incompetence in recent elections.

94.     The need to train election officials and to establish proper protocols and procedures for quality control to ensure accurate ballots for all voters is obvious, and the highly predictable consequence of not adequately training—or not training at all—is the disenfranchisement of voters.

95.     Defendants, and specifically Defendant Hopkins, were deliberately indifferent and exhibited callous disregard for the rights of Plaintiffs and others with whom Defendants' employees came in contact.

96.     Defendants' inadequate and non-existent training and establishment of quality control protocols and processes caused Plaintiff's constitutional rights to be violated.

97.     Defendants' failure to train their employees and to establish quality control protocols caused the Department to inadequately respond when the Department discovered that 545 Republican Primary voters received incorrect ballots.

98.     Defendant Hopkins made deliberate decisions not to proofread ballots or to subject them to the required comprehensive testing.

99.     Defendant Hopkins made deliberate decisions not to establish a comprehensive and effective protocol to replace unusable ballots that voters received.

100.    In sum, Defendants violated the Plaintiff's fundamental right to vote through the following actions and failure to act, which had the effect of policy: (a) Failing to review, proofread, and control the quality of all mail-in

and absentee ballot styles prior to delivering said ballots to voters; (b) Failing

to respond adequately upon discovery of the incorrect ballots such that

voters, such as Plaintiff herein, did not receive correct ballots and were thus

denied the opportunity to vote in the 2025 Primary Election; (c) Failing to

train employees appropriately in the proper administration of an election.

101.    Additionally, to the extent that such policies were not the

moving force causing Plaintiff's disenfranchisement, but rather the

unauthorized, intentional, neglectful, or reckless conduct and callous

disregard by Defendant Hopkins that caused the disenfranchisement, then

the Defendants are liable for such unauthorized conduct.

## CAUSES OF ACTION

## COUNT I

**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
RIGHT TO VOTE –
INADEQUATE QUALITY CONTROL POLICIES & PROCEDURES**

102.    Plaintiff incorporates the previous paragraphs by reference.

103.    "Undeniably the Constitution of the United States protects the

right of all qualified citizens to vote, in state as well as in federal elections."

*Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

104.    The right to vote cannot be denied outright or where the

government imposes substantial burdens on the right to vote. *See Storer v.*

*Brown*, 415 U.S. 724, 729-730 (1974); *Crawford v. Marion County Election*

*Board*, 553 U.S. 181 (2008).

105.    The right to vote is a fundamental right under the substantive Due Process Clause of the Fourteenth Amendment.

106.    The right to vote is a right to express one's political preferences under the First Amendment.

107.    The right to vote cannot be subjected to arbitrary, capricious, or standardless treatment. *Bush v. Gore*, 531 U.S. 98 (2000).

108.    Defendants, acting under the color of state law, disenfranchised Plaintiff, severely burdened Plaintiff in exercising his right to vote, and violated his First and Fourteenth Amendment rights in the 2025 Primary Election.

109.    Defendants violated Plaintiff's First and Fourteenth Amendment rights by denying him the right to vote and severely burdening their right to vote in the 2025 Primary Election.

110.    Specifically, Defendants' official policy to fail to proofread and to confirm the accuracy of all mail-in and absentee ballot styles prior to delivering said ballots to voters denied and severely burdened Plaintiff's right to vote.

111.    Moreover, Defendant Hopkins' deliberate decision not to proofread the entirety of the ballots or to subject them to appropriate testing and quality control denied and severely burdened Plaintiff's right to vote.

112.    Likewise, the Defendants' official policy to fail to respond adequately upon discovery of the incorrect ballots such that voters did not

receive the correct ballots denied and severely burdened Plaintiff's right to vote.

113.    Defendants' wholly inadequate election administration policies subjected Plaintiff's access to the ballot to wholly arbitrary, capricious, and standardless treatment in violation of the substantive Due Process Clause of the Fourteenth Amendment.

114.    Defendants cannot advance any state interest sufficient to justify their official policy of failing to proofread and to confirm the accuracy of all mail-in and absentee ballot styles prior to delivering said ballots to voters or failing to implement adequate remedial or back-up plans and procedures when improper ballots were discovered.

115.    Plaintiff and voters similarly situated are likely to be disenfranchised or their right to vote severely burdened in the future if Defendants fail to correct their policies and procedures, and upon information and belief, Defendants have taken no steps to do so.

## COUNT II

### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS-FAILURE TO TRAIN FOR BALLOT REVIEW

116.    Plaintiff incorporates the previous paragraphs by reference.

117.    Defendants violated Plaintiff's fundamental right to vote, in violation of the First Amendment and substantive Due Process Clause of the

Fourteenth Amendment, because of inadequate and non-existent training of election officials in the proofreading and quality control of ballots.

118.    Defendants acted deliberately and with callous indifference to the rights of Plaintiff.

119.    Defendants' inadequate and non-existent training of election officials, including the Director of Elections, caused Plaintiff's constitutional rights to be violated.

120.    Defendants' failure to properly train election officials and workers subjected Plaintiff's access to the ballot to arbitrary, capricious, and standardless treatment and resulted in disenfranchisement.

121.    Further, Defendants cannot advance any state interest sufficient to justify their deliberate indifference to Plaintiff's constitutional rights and their failure to train election officials.

## COUNT III

**VIOLATION OF 42 U.S.C.§1983 AGAINST DEFENDANT HOPKINS**

122.    Plaintiff incorporates the previous paragraphs by reference.

123.    At all times relevant to this action, Defendant Hopkins acted under color of the laws of the Commonwealth of Pennsylvania.

124.    The actions of Defendant Hopkins as described herein deprived Plaintiff of rights, privileges, and immunities secured for U.S. Citizens by the

United States Constitution, specifically the First and Fourteenth Amendments.

125.    Defendant Hopkins exhibited callous disregard for the rights of Plaintiff, and her conduct was reckless, intentional, or showed deliberate indifference to Plaintiff's federally protected constitutional rights.

126.    As a direct and proximate result of the actions of Defendant Hopkins, Plaintiff suffered damages, including the deprivation of the right to vote, for which Plaintiff is entitled to relief.

<u>**COUNT IV**</u>

**VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION**

127.    Plaintiff incorporates the previous paragraphs by reference.

128.    The right to vote is a fundamental right subject to strict scrutiny under the Equal Protection Clause of the Fourteenth Amendment.

129.    The right to vote, including access to the ballot, cannot be subjected to arbitrary, capricious, or standardless treatment. *Bush*, 531 U.S. at 109.

130.    Defendants violated Plaintiff's Fourteenth Amendment rights to equal protection of the law.

131.    The right to vote and to have one's vote counted cannot be made dependent on the voter's political party or where the voter lives. *Reynolds*, 377 U.S. at 555 (holding that voters were denied due process based on

unequal legislative districts.); *Bush*, 531 U.S. at 109 (Fourteenth Amendment assures that uniform, rational standards and procedures be used in a statewide recount of votes.); *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219 (6th Cir. 2011) (holding that Fourteenth Amendment required uniform rules for counting of provisional ballots cast at wrong precinct).

132.    Defendants, acting under color of state law, maintained an unequal system of voting that lacks uniform standards and processes, severely burdens and denies equal access to the right to vote, and results in arbitrary and disparate treatment.

133.    Plaintiff was disenfranchised and his right to vote severely burdened because he lived in a location where Defendants failed to supply the election districts with the correct ballots for the Republican primary election, to implement adequate remedial plans, and to properly train election officials and workers.

134.    In the 2025 Primary Election, access to a correct ballot on which a vote could be cast was entirely dependent on the party chosen by the voter and where a voter lived.

135.    Some voters in Lackawanna County received accurate ballots, but at least 545 Republican Primary voters, including Plaintiff, did not receive accurate ballots.

136.    Plaintiff did not and does not have equal access to the franchise or the right to have their votes counted equally as Democratic primary voters,

voters in other localities of Pennsylvania, and voters in other areas of Lackawanna County.

137.   Plaintiff's equal protection rights are likely to be violated in future elections.

## COUNT V

## VIOLATION OF FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

138.   Plaintiff incorporates the previous paragraphs by reference.

139.   Defendants violated Plaintiff's rights under the procedural Due Process Clause of the Fourteenth Amendment by depriving Plaintiff of the right to vote without due process of law.

140.   Plaintiff was denied the right to vote without any notice or pre-deprivation hearing. Rather, his rights were denied through no fault of his own, and he was offered no timely procedure by which he could actually cure the incorrect ballot.

141.   Plaintiff was not provided with an appeal process to challenge the denial of his right to vote.

142.   Plaintiff's right to vote may be deprived without due process of law in the future.

143.   Defendants' official policies, inadequate ballot review procedures, and lack of training subject Plaintiff and all others similarly

situated to a great risk of an erroneous deprivation of their fundamental right to vote.

144.   This risk could be remedied through additional procedural safeguards, such as quality control and proofreading of all ballots upon their return from the printer and prior to transmission of the ballots to voters, procedures providing for additional and alternative methods of notifying voters in the event of a problem with a ballot, ensuring that voters who do not receive their mail ballots and are unable to vote in person are afforded prompt and timely remedial ballot access , and training for election officials.

145.   Such procedures would impose at most de minimus administrative burdens on defendants, and indeed, are actions that defendants should have already been taking to prevent deprivation of voters' constitutional rights.

## **DEMAND FOR RELIEF**

Plaintiff respectfully request that the court:

a.   enter a declaratory judgment that the Defendants violated Plaintiff's First and Fourteenth Amendment rights in the 2025 Primary Election;

b.   enter a declaratory judgment that Defendants' administration of elections in Lackawanna County violates the First and Fourteenth Amendments;

c.      enter a preliminary and permanent injunction that prevents Defendants from denying or severely burdening Plaintiff's constitutionally protected right to vote;

d.      preliminary and permanently enjoin Defendants before the next election:

(i)      to promulgate, adopt, and enforce uniform policies and procedures that ensure all absentee and mail-in ballots are reviewed, proofread, and subject to comprehensive quality control procedures, processes, and testing before mailing to voters;

(ii)      to promulgate, adopt, and enforce uniform policies and procedures that ensure all absentee and mail-in voters who receive a defective ballot receive timely communication, are delivered proper notices, and receive a timely and accurate replacement ballot with appropriate instructions;

(iii).    to promulgate, adopt, and enforce uniform standards and processes to ensure that every registered and qualified voter in an election district is able to vote without unreasonable delay or hardship encountered in the absentee and mail-in ballot process;

(iv).    to promulgate, adopt, and enforce a uniform and comprehensive program to recruit and train employees, including election officials and employees before each election to ensure that the election is properly staffed and administered and conducted according to federal and state law; and

(v)     to promulgate, adopt, and enforce a uniform and comprehensive program to ensure elections in Lackawanna County are free, fair, and equal.

e.     award Plaintiff nominal damages;

f.     award costs and attorneys' fees under 42 U.S.C. § 1988; and

g.     award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted,

Dated: December 26, 2025     */s/ Linda A. Kerns*

LINDA A. KERNS, ESQUIRE (PA ID 84495)
**LAW OFFICES OF LINDA A. KERNS, LLC**
1420 Locust Street, Suite 200
Philadelphia, PA 19102
(T) 215-731-1400
(F) 215-701-4154
linda@lindakernslaw.com